IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENNETH SHELTON**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. **04-653-CJP** |
| | ) |
| **D. NEAL**, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

Plaintiff Kenneth Shelton filed suit under 42 U.S.C. §1983 against a number of defendants. Summary judgment was granted in favor of defendants on all claims except plaintiff's claim for retaliation against defendant. **See, Doc. 48.**

The parties filed consents to final disposition by a magistrate judge, and the case was assigned to the undersigned pursuant to 29 U.S.C. §636(c). **See, Docs. 51 & 52.** The parties waived their jury demands. **Doc. 55**.

The case was tried on July 16, 2007. At the close of the evidence, the defendant made an oral motion for judgment pursuant to Fed.R.Civ.P. 52. **(Doc. 59)**. The court took the motion under advisement.

Pursuant to **Rule 52(a)**, in a case tried to the Court without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon." **Rule 52(c)** provides that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be

1

supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

## **Findings of Fact**

The court makes the following findings of fact:

1. The final pretrial order states that the nature of the case is that plaintiff alleges that his supervisor, defendant Neal, refused to call him out to work in the dietary unit at Pinckneyville Correctional Center in retaliation for his having filed grievances.  (Tr. 5-6; Doc. 54).

2. Plaintiff Kenneth Shelton is an inmate in the custody of the Illinois Department of Corrections.  He has been assigned to Lawrence Correctional Center since November 9, 2006.  Before Lawrence, he was at Menard and Pinckneyville. (Tr. 7).

3. Shelton testified that Neal "made little threats at me about quit asking the officers about raises and this and that and we'll start leaving you in.  And it just lead to me, you know, I couldn't say nothing to him or the officers so I did file the grievance was [sic] my proof."  (Tr. 8).

4. Shelton also testified that his state pay was short on two occasions. (Tr. 8-9).

5. Plaintiff filed a grievance on March 16, 2004, in which he stated that he was not being called out to work at rolling spoons because other inmates, who were not physically challenged, were being assigned to the spoon rolling jobs.  Plaintiff stated that these inmates should be assigned to other jobs, and that the spoon rolling jobs should be given only to the physically challenged inmates. (Defendants' exhibit 1a.)

6. Shelton is severely visually impaired, and is unable to do any job in the dietary unit other than rolling silverware due to his disability. (Final Pretrial Order, Doc. 54, Stipulated Facts, p. 2). That job consisted of putting salt and pepper packets on a spoon and folding it up in a napkin. The roll was then put in a plastic container which holds about 750 spoons. (Tr. 13).

7. Shelton was assigned to Pinckneyville from March, 1999, to around the end of 2006. He started working in the dietary unit on September 20, 2000. He was given that job because he went to the warden and asked her if there was something he could do. (Tr. 17-18).

8. Plaintiff testified that Neal first starting leaving plaintiff in and not calling him out for work because Shelton was asking officers about getting a raise. Shelton then filed a grievance in March, 2004. (Tr. 11).

9. Plaintiff's pay was short in June, 2004. However, the shortage was made up in September, 2004. (Tr. 12-13; Defendant's Exhibit 2).

10. Shelton testified that he was supposed to work seven days a week. He would be called out for work at 9:00 p.m., and work until about 12:30 a.m. (Tr. 14).

11. Shelton was able to leave his cell every day, whether or not he was working. He could leave his cell to go to yard, or to church, or to the health care unit. (Tr. 15).

12. Shelton got paid whether or not he worked. (Tr. 16).

13. Plaintiff called Anthony McClore as a witness. McClore is in inmate at Dixon Correctional Center. On direct examination, plaintiff asked McClore if he remembered that Shelton was "left in when everybody else went [to work]" and

      that Shelton was "whooped by the word of Mr. Neal because of filing a grievance." (Tr. 22). McClore answered that he did remember. (Tr. 22).

14. McClore testified that defendant Neal talked to him about how McClore felt about the grievances that were filed by Shelton. McClore told Neal "you all got a problem with this inmate." (Tr. 24).

15. Plaintiff called Johnny James Johnson as a witness. Johnson is an inmate currently assigned to Pinckneyville Correctional Center. (Tr. 25-26). Plaintiff asked Johnson how many times he knew of that plaintiff was "left in when I [was] supposed to went [sic] to work with everybody else?" The witness answered, "I think probably about three times or something like that I can recall." (Tr. 28). Johnson testified that he did not know why plaintiff was not called for work. (Tr. 29).

16. Plaintiff called inmate William Thomas as a witness. Thomas was housed at Pinckneyville. (Tr. 30). When asked if he remembered Neal not letting Shelton come to work, Thomas replied, "Yeah, he done all of us like that." (Tr. 31). Thomas testified that he did not remember the grievance. (Tr. 31). The witness also testified that plaintiff was left in "a few times, but it happened to all of us." (Tr. 32).

17. Plaintiff called James Cross, an inmate at Pinckneyville. (Tr. 33). Cross testified that "Everybody experienced being left in." (Tr. 34).

18. Similarly, plaintiff's witness Milton Williams, Jr., also testified that "They wouldn't allow us to work." (Tr. 36). He said that everybody else would go five

nights a week, but "we" would only go once a week. (Tr. 36-37).

18. Defendant Neal testified in his own behalf. He has been employed at Pinckneyville Correctional Center since 1998. He is a Correctional Food Supervisor. (Tr. 41).

19. Neal denied that he had ever spoken with inmate McClore about a grievance that plaintiff had filed against him. He testified that he has never spoken with an inmate about a grievance filed against him. (Tr. 44).

20. Neal testified that he was not aware of the March 16, 2004, grievance filed by plaintiff until this lawsuit was filed. (Tr. 44-45).

21. Neal testified that he did not retaliate against plaintiff for filing the March 16, 2004, grievance, and that he "was unaware of the grievance." (Tr. 46).

22. The March 16, 2004, grievance does not mention Neal's name. (Tr. 45).

23. Defendant called Vicki Hubbard as a witness. She is a Correctional Counselor at Pinckneyville. She wrote the counselor's response to plaintiff's March 16, 2004, grievance. (Tr. 50-51). She consulted the Dietary Supervisor, Terri Bryant, for information to prepare her response. (Tr. 52). She did not consult Neal about the grievance. (Tr. 51).

24. Terri Bryant, Dietary Manager at Pinckneyville, was called to testify by defendant. (Tr. 55). She testified that she is consulted about inmate grievances against food supervisors. She does not inform the food supervisors about grievances because knowledge of a grievance could change the way the supervisor manages his area. (Tr. 56). She testified that, if she does need to ask

5

the supervisor a question about a grievance, she does not tell the supervisor which inmate filed the grievance. (Tr. 56). She also stated that she did not tell Neal or anyone else about plaintiff's grievance. (Tr. 57).

### Conclusions of Law and Analysis

A prison inmate has no protected liberty or property interest in his prison job, ***DeWalt v. Carter*, 224 F.3d 607, 613**, **(7th Cir. 2000).** This means that failing to call plaintiff out for work does not, in and of itself, violate his constitutional rights. However, an act that is otherwise permissible may violate an inmate's rights if it is done for the purpose of retaliating for the inmate's exercise of his First Amendment rights. ***DeWalt*, 224 F.3d at 618**.

Plaintiff identified two different reasons for Neal's alleged retaliation. He first said that Neal started leaving him in because he was asking officers about getting a raise. Shelton testified that Neal "told me to stay away from the officers and quit asking about raises and stuff. And I would tell him I have a freedom of speech to speak to this officer.... And that's where it all started at." (Tr. 11). Shelton also stated that Neal left him in because he filed the March 16, 2004, grievance. (Tr. 11-12). The court will consider each of these instances of speech separately.

The court first observes that plaintiff's evidence did not prove that Neal in fact failed to call him out for work when there was spoon rolling work to be done. While plaintiff testified that he was not always called out to work, he presented no evidence at all to establish that there was work available for him to do on those occasions. His own witnesses testified that not every dietary unit worker was called out for work every day. (Tr. 31, 32, 34, 36). However, even if plaintiff had shown that Neal left him in when there was spoon rolling work to be done, he has

not shown that Neal's actions amounted to retaliation for exercise of a constitutional right.

Whether speech is protected by the First Amendment is, of course, a legal question. **Anderer v. Jones, 385 F.3d 1043, 1052 (7th Cir. 2004)**. The First Amendment does not apply to every statement uttered by a prison inmate. In order to be protected by the First Amendment, the inmate's speech must relate to a matter of "public concern" or "urge a change in prison policy;" in contrast, a "personal gripe" is not protected. **Pearson v. Welborn, 471 F.3d 732, 740-741 (7th Cir. 2006)**. Asking for a raise or complaining about not receiving a raise is communication about a personal matter, which is not protected by the First Amendment. See, **McElroy v. Lopac, 403 F.3d 855, 858-859 (7th Cir. 2005)**, in which the Seventh Circuit held that an inmate's inquiries into receiving "lay-in pay" when his prison job was eliminated was not protected speech.

This court concludes that Shelton's inquiries about receiving a raise are not protected speech. Therefore, he cannot prevail on a claim that Neal retaliated against him for asking officers about raises.

In contrast, plaintiff's filing of a grievance is constitutionally protected conduct. "Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." **DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000)**.

The fact that the filing of the grievance was protected conduct does not end the inquiry. In order to prevail, plaintiff must prove that the grievance was "a motivating factor" behind Neal's actions. **Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996)**. Part of plaintiff's required proof is a showing that Neal was aware of the grievance at the time he engaged in the allegedly

retaliatory conduct.

The only evidence that Neal knew about the grievance was the testimony of plaintiff's witness Anthony McClore. McClore testified that, at some unidentified time, Neal asked McClore what McClore thought about Shelton's grievance. (Tr. 24).

There was substantial evidence that Neal did not learn of the existence of the March 16, 2004, grievance until he learned about it in the course of this litigation. First, Neal testified to that fact. (Tr. 44-46). Neal also denied talking to McClore or to any other inmate about any grievance filed against him. (Tr. 44). The March 16, 2004, grievance did not mention Neal's name. The gist of the grievance was that able-bodied inmates were being assigned to roll spoons, which resulted in him not being called out for work. (Defendant's exhibit 1a.) The court notes that Shelton testified that he filed two grievances in March, 2004, because the prison said the first one was lost. (Tr. 12). There was no suggestion that the first grievance said anything different from the second one. The counselor who handled the grievance testified that she did not consult Neal about the grievance. (Tr. 50-52). Lastly, the manager of the dietary unit testified that her policy is to refrain from informing supervisors like Neal that an inmate has filed a grievance. The reason for this policy is to avoid creating a situation where the supervisor treats an inmate differently because he has filed a grievance. (Tr. 55-56). In other words, the purpose of the policy is to avoid retaliation for the filing of grievances. The manager, Terri Bryant, testified that she followed the policy in this instance and did not tell Neal or anyone else that plaintiff had filed the March 16, 2004, grievance. (Tr. 57).

Based on the above evidence, the court finds that Neal did not know about plaintiff's March 16, 2004, grievance until this lawsuit was filed. The court rejects McClore's testimony

that Neal consulted him about the grievance as not credible.  The record is devoid of any suggestion as to why Neal would have been interested in McClore's opinion about the grievance.  McClore testified that he was an "institutional chaplain" and that Neal knew that he "tell[s] it like it is."  (Tr. 24).  McClore had worked in the dietary unit serving food, passing out water, and on the floor crew, but the records suggests no logical reason why Neal would have sought McClore's opinion about staffing the spoon rolling job, which was the subject of the grievance.

The court finds the testimony of Neal, counselor Hubbard, and Terri Bryant to be credible.  In particular, Bryant's testimony about her policy for handling grievances and the reason for that policy was compelling.

The weight of the evidence established that Neal did not know about Shelton's grievance at the relevant time.  Therefore, plaintiff cannot prevail on his claim that Neal retaliated against him for filing the grievance.

## Conclusion

For the foregoing reasons, defendant's Oral Motion for Judgment as a Matter of Law **(Doc. 59)** is **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of defendant Douglas Neal.

**IT IS SO ORDERED.**

**DATE:  August 24, 2007.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
